IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **KEVIN BERNHARDT,** | ) | **CASE NO. 4:09CV3004** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **RON JOHNS, RICHARD HERNANDEZ, JEREMIAH BRETTHAUR, SEAN SUHR, ROMANA LOPEZ, CHARLES GANNON, JADE FRY, BRUCE MEYER, EDDY BLANCO, and REENE HEILER,** | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 27.) As set forth below, the Motion is granted.

## I. BACKGROUND

Plaintiff Kevin Bernhardt ("Bernhardt") originally filed his Complaint in the Scotts Bluff County, Nebraska District Court on December 18, 2008. (Filing No. 1-2, Attach. 1, at CM/ECF p. 25.) Defendants properly removed the matter to this court on January 9, 2009. (Filing No. 1.) Plaintiff thereafter filed his Amended Complaint, which is the operative complaint in this matter. (Filing No. 21.) Plaintiff's Amended Complaint is brought pursuant to 42 U.S.C. § 1983 and, liberally construed, alleges that Defendants violated Plaintiff's Eighth Amendment rights to receive timely and appropriate medical treatment for high blood pressure and other conditions while incarcerated in the Scotts Bluff County, Nebraska jail. (*Id.*)

Defendants filed their Motion for Summary Judgment on April 30, 2009. (Filing No. 27.) Along with their Motion, Defendants also filed an Index of Evidence and Amended Brief in Support. (Filing Nos. 28 and 31.) Plaintiff filed a Response to the Motion, in which

he referred the court to his previous briefs, but did not submit any evidence in support of his allegations or arguments. (Filing No. 32.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants have submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted any "concise response" to those facts. Further, Defendants submitted evidence which was properly authenticated by affidavit. Plaintiff has not. This matter is deemed fully submitted and the material facts set forth by Defendants are "deemed admitted" due to Plaintiff's failure to controvert those facts.

## II. RELEVANT UNDISPUTED FACTS

1. Plaintiff was, at all times relevant to the Amended Complaint, a prisoner at the Scotts Bluff County, Nebraska Adult Corrections Center ("SBCC").

2. At all relevant times, Dr. Lisa Scheppers ("Scheppers") was one of Plaintiff's regular health care providers.

3. Plaintiff alleges in his Amended Complaint that on October 6, 2006, he was lightheaded and dizzy and fainted. He asked to be taken to the hospital, but Defendants did not do so.

4. The records and testimony of Scheppers and the SBCC show that Plaintiff's correct dose of Diovan on October 6, 2006, as prescribed by Scheppers, was 320 milligrams per day.

5. The SBCC records, which are initialed by both a member of the SBCC staff and Plaintiff, indicate that Plaintiff received 320 milligrams of Diovan exactly as prescribed on October 6, 2006.

6. In approximately March 2007, Plaintiff had an office visit with Scheppers, at which time she reduced Plaintiff's prescription for Diovan from 320 to 160 milligrams per day, and later to 80 milligrams per day.

7. According to SBCC records, Plaintiff received ½ of a 320 milligram tablet, or 160 milligrams, of Diovan per day from March 2007 until July 12, 2007, at which time he began receiving 80 milligrams per day.

8. Despite receiving a higher than prescribed dosage of Diovan, Plaintiff did not suffer from any hypotensive episodes between March 2007 and the incident on July 10, 2007.

9. Plaintiff alleges in his Amended Complaint that on July 10, 2007, he was lightheaded, had blurred vision and nausea and that he fainted and hit his head. He was

attended to by Defendants Hernandez, Suhr, and Meyer but was not taken to the hospital immediately despite his requests to "see someone."

10. Scheppers' notes as contained in Plaintiff's medical chart indicate that following Plaintiff's alleged fall on July 10, 2007, the "officers were to him immediately," and that the officers called in the "community nurse" who then "evaluated" the Plaintiff.

11. Scheppers' notes further indicate that after being given vitamin K the Plaintiff was "stable," and that the Plaintiff saw an Optometrist following his fall on July 10, 2007.

12. On July 12, 2007, two days after the July 10, 2007, incident described above, Plaintiff was examined again by "Martha with Community Health," who in turn placed a call to Scheppers and informed her of Plaintiff's status, which consisted of, "a black eye with edema that has closed the eye."

13. Also on July 12, 2007, SBCC staff made an appointment for Plaintiff to see Dr. Mahoney that same day, and another appointment was made for Plaintiff to see Scheppers for follow up care on Monday, July 16, 2007.

14. On July 16, 2007, Plaintiff was taken by SBCC staff to Horizon's West Medical Center for his appointment with Scheppers.

15. At the July 16, 2007, appointment, Scheppers checked Plaintiff's blood pressure and it was within the normal therapeutic range.

16. At the July 16, 2007, appointment, Scheppers ordered a CT scan of Plaintiff's eye area, which revealed a fracture of the orbit around the left eye, but no intracranial bleeding.

17. Scheppers scheduled Plaintiff for surgery to repair the fracture, which occurred as scheduled.

18. At all times relevant to the Amended Complaint, Plaintiff was prescribed and administered numerous medications for a variety of health problems, including heart disease, a history of seizures, asthma, mental illnesses, thyroid disease, and uncontrolled diabetes.

19. Scheppers was unable to reach any conclusion to a reasonable degree of medical certainty as to the reason for either of Plaintiff's alleged episodes of fainting and falling.

20. It is the opinion of Scheppers that Plaintiff's two alleged fainting episodes may have been caused by one of his medical conditions aside from high blood pressure, an adverse side effect to one or more of his medications aside from Diovan, or an adverse interaction between two or more his various medications aside
from the Diovan.
(Filing Nos. 29 and 31.)

### III.  ANALYSIS

#### A.  Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view

the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

   **B.** **Plaintiff's Eighth Amendment Claim**

Liberally construed, Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendants violated Plaintiff's Eighth Amendment rights to receive medical care while incarcerated because they failed to hospitalize him when he fainted and because he was given too much of the blood pressure drug Diovan. (Filing No. 1.) As set forth below, Defendants provided Plaintiff with appropriate medical care in accordance with their obligations under the Eighth Amendment. Therefore, no Eighth Amendment violation occurred and Defendants are entitled to summary judgment.

To sustain a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of but

deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394 (8th Cir. 2007). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-104). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.") (quotation omitted); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.")

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). Bare assertions or a "self-

diagnosis," without more, are not enough to sustain an Eighth Amendment claim. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also Long v. Nix*, 86 F.3d 761 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

Viewing the facts in the light most favorable to Bernhardt, his overall medication condition was serious. He had been diagnosed with numerous chronic and potentially life-threatening conditions and had fainted twice over the course of several months. He was also taking numerous prescription drugs. Thus, the question for the court is whether Defendants were deliberately indifferent to Bernhardt's serious medical needs. Plaintiff's allegations of "deliberate indifference" relate entirely to his assertions that he was given too much of the blood pressure drug Diovan and that he did not receive appropriate treatment for his two fainting spells in a timely manner. Plaintiff apparently believes that he needed to be immediately hospitalized after he fainted on October 6, 2006 and July 10, 2007. However, as set forth above, Plaintiff has no right to receive a particular course of treatment.

Defendants have submitted the deposition of Plaintiff's treating physician and SBCC records showing that the treatment Plaintiff received was extensive and more than adequate. Indeed, Plaintiff received ongoing treatment for his medical conditions, including physician visits and the administration of prescription drugs. Plaintiff saw Scheppers between his two fainting spells and his medication was adjusted. Within the week after he fainted on July 10, 2007, Plaintiff received visits from the "community nurse," had appointments with an optometrist and Scheppers, had a CT scan, surgery and

8

hospitalization, and other care. All together, Plaintiff received extensive medical care over the course of several days, and was treated on an ongoing basis from the time he fainted until his medical condition was fully resolved. Plaintiff has not submitted any evidence controverting these facts or showing that his medical conditions were deliberately disregarded or ignored by Defendants.

Additionally, there is nothing in the record before the court supporting Plaintiff's "self diagnosis" that his fainting spells were caused by an overdose of the drug Diovan. Rather, the undisputed evidence shows that Plaintiff was given the correct dose of Diovan prior to, and on the date of, Plaintiff's October 6, 2006, fainting spell. Although Plaintiff was mistakenly given a larger dose of Diovan for a period of time prior to his July 10, 2007, fainting spell, there is nothing in the record showing that Plaintiff's fainting or other symptoms was caused by the larger dose. Rather, Plaintiff's treating physician testified that it could have been any one of the numerous medical conditions and medications Plaintiff was taking that caused him to faint and that his blood pressure was normal in spite of the larger dose. Even if the July 10, 2007, incident was caused by too much Diovan, at best Defendants committed negligence which is not enough to support an Eighth Amendment claim.

In short, Plaintiff's complaints regarding the treatment he received when he fainted amount to "disagreement with a medical judgment," which are not enough to sustain an Eighth Amendment claim. *Davis*, 992 F.2d at 153 (8th Cir. 1993). Although Plaintiff believes he should have been immediately hospitalized after fainting twice, he has no right to a "requested course of treatment." The uncontroverted facts show that Defendants exercised their professional judgment in treating Bernhardt and that he had extensive

medical treatment after his two fainting spells. Plaintiff has submitted no evidence to the contrary. In light of the undisputed evidence, Defendants provided adequate care to Plaintiff and are entitled to summary judgment. The Eighth Amendment claims against Defendants are therefore dismissed with prejudice.

However, Plaintiff may still have state law claims for medical malpractice. The court declines to exercise jurisdiction over those state law claims given that it is dismissing all federal claims. Therefore, the court will dismiss Plaintiff's state-law claims without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (Filing No. 27) is granted. Plaintiff's federal Eighth Amendment claims are dismissed with prejudice. Plaintiff's state-law claims are dismissed without prejudice;

2. All other pending motions are denied; and

3. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 16th day of September, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.